2001 SD 73

**Harry THOMAS and Kay Thomas Husband and Wife, and Lowell West and Catherine West, Husband and Wife, Plaintiffs and Appellants,**

v.

**SULLY COUNTY, A Political Subdivision of the State of South Dakota, Defendant and Appellee.**

**No. 21591.**

Supreme Court of South Dakota.

Considered on Briefs on April 24, 2001.

Decided June 6, 2001.

Danny R. Smeins, Webster, SD, Attorney for plaintiffs and appellants.

David A. Gerdes of May, Adam, Gerdes and Thompson, Pierre, SD, Attorney for defendants and appellee.

GILBERTSON, Justice

[¶ 1.] Harry and Kay Thomas, and Lowell and Catherine West (Plaintiffs) sued Sully County (County) claiming damages to their fences. A jury returned a verdict in favor of County. The trial court entered judgment on the verdict, from which Plaintiffs have appealed. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Plaintiffs are landowners in Sully County, South Dakota. During the winter of 1996–97, Sully County received nearly seven feet of snow. By January of 1997, County's normal snow removal equipment could no longer move the large amounts of hard packed snow that had accumulated along the roadside. In response, County acquired payloaders and bulldozers for use in keeping the roads open. To further combat the drifting snow, County began clearing snow off the right-of-ways.

[¶ 3.] On November 13, 1997, Plaintiffs commenced a lawsuit against County. In that lawsuit, Plaintiffs alleged County damaged their fences while moving snow off the right-of-ways. County denied liability and claimed the snow removal was within its statutory discretion, was a public necessity or that Plaintiffs' damage resulted from an act of God. The dispute was tried to a jury on April 25, 2000. The jury returned a general verdict in favor of County. The trial court entered its judgment in accord with the jury verdict on April 28, 2000. Plaintiffs appeal, raising two issues.

1. Whether the trial court erred in giving a jury instruction that County's decisions relating to snow removal were discretionary.

2. Whether the trial court erred in admitting evidence of a collateral source.

## STANDARD OF REVIEW

[¶ 4.] When we review jury instructions on appeal, we examine them as a whole to determine whether "they provided a full and correct statement of the law." *Veeder v. Kennedy*, 1999 SD 23, ¶ 32, 589 N.W.2d 610, 618. Reversible error exists if the instructions fail to meet that standard; for instance, if they conflict, mislead, or cause confusion. *Id.* If the instruction was given in error, an appellant must then show that the instruction was prejudicial, "meaning the jury probably would have returned a different verdict if the faulty instruction had not been given." *Id.*

## ANALYSIS AND DECISION

[¶ 5.] **1. Whether the trial court erred in giving a jury instruction that County's decisions relating to snow removal were discretionary.**

■ [¶ 6.] Plaintiffs allege the trial court erred in giving Instruction 9. That instruction reads as follows:

> By law, Sully County owes a duty to the general public to ensure accessibility of roads, especially for access by emergency vehicles. A statute of the state provides:
>
>> The board of county commissioners with the county highway superintendent shall be the sole judges as to the necessity, need, and emergencies for snow removal operations and repairs, and shall exercise full discretion with decisions relative thereto.
>
> If you find that the County's decision to plow snow proximately resulted from the legitimate discretion of the County Commissioners and the County Highway Superintendent for snow removal operations, you must find for the defendant.

Instruction 9 is based on, and quotes from, SDCL 34-5-4.[1] According to Plaintiffs, Instruction 9 was in effect a grant of immunity to County's actions.

■ [¶ 7.] Assuming, without deciding, that Instruction 9 was an incorrect statement of the law, we proceed to the second prong, whether the error was prejudicial. We conclude Plaintiffs have failed to show "the jury probably would have returned a different verdict if the faulty instruction had not been given." *Veeder,* 1999 SD 23, ¶ 32, 589 N.W.2d at 618. We have previously noted that, "in a civil case, if a general verdict is handed down and the jury could have decided the case on two theories, one proper and one improper, the reviewing court will assume that it was decided on the proper theory." *Eberle v.*

*Siouxland Packing Co., Inc.,* 266 N.W.2d 256, 258 (S.D.1978). Only if there is "an affirmative showing in the record to the contrary," will we abandon this assumption. *Limmer v. Westegaard,* 251 N.W.2d 676, 679 (S.D.1977).

[¶ 8.] In *Allen v. McLain,* 75 S.D. 520, 69 N.W.2d 390 (1955) the jury returned a general verdict finding the defendant liable. On appeal, the defendant claimed the jury instructions permitted a finding of liability based on mere negligence, rather than the requisite willful or wanton acts. Because the jury returned a general verdict, we could not "tell upon which counts the verdict was predicated; hence we [could not] tell whether the error of the court harmed the defendant." *Id.* at 529, 69 N.W.2d at 395. Similarly, in *Eberle,* the jury returned a general verdict for the plaintiff. 266 N.W.2d at 258. The defendant claimed the jury should have been instructed only on express contract, rather than on both express and implied. Because the verdict was supported by the express contract instructions, the verdict was affirmed. We employed the same reasoning in *Knudson v. Hess,* 1996 SD 137, 556 N.W.2d 73, where the plaintiff alleged the jury was erroneously instructed on contributory negligence. We affirmed the general verdict in favor of the defendant, noting that "without a special verdict form, we have no way of knowing whether the jury ever reached [the] question [of contributory negligence]." *Id.* ¶ 16, 556 N.W.2d at 77–78.

■ [¶ 9.] Because a general verdict form was used in this case, we must determine if there is a properly submitted legal

---

1. That statute provides:

The board of county commissioners with the county highway superintendent shall be the sole judges as to the necessity, need, and emergencies for snow removal operations and repairs, and shall exercise full discretion with decisions relative thereto. To expend money from said fund as otherwise provided in § 34–5–3, the Governor or the board of county commissioners by a resolution duly adopted must declare that a time of emergency and disaster exists.

theory that supports this verdict. We find there are several. First, the jury could have found that County did not breach the standard of care it owed Plaintiffs. Therefore, no liability would attach if County acted as a reasonably prudent person would act under the same or similar circumstances. It is County's duty to reasonably maintain its roadways, and keep them open to travel. *Bland v. Davison County,* 507 N.W.2d 80, 81 (S.D.1993). During the climatic winter of 1996–97, County employed extraordinary methods to carry out this duty. Harry Thomas (Thomas) admitted it was important to widen the path cleared by the plows to keep the roads open. If County had not plowed the right-of-ways, it would have been extremely difficult to keep the roads open for citizens and emergency personnel. In addition, the fence lines were often buried under snow, making them difficult for the road crews to identify. These difficulties were aggravated by the near blizzard conditions in which the road crews often worked. Given these circumstances, the jury could have found County acted reasonably and did not breach the duty it owed Plaintiffs.

[¶ 10.] Second, if the jury found County breached its duty, it could have found County's snow removal did not proximately cause the damage to Plaintiffs' fences. The jury was instructed that any breach of duty must be "an immediate cause of any injury, which, in natural or probable sequence, produces the injury complained of." Thomas admitted at trial that the fences could have been damaged by the natural accumulation of snow during the winter. In addition, Highway Superintendent Randy Gabriel (Gabriel) testified that many fences were damaged during the winter along roads that County had not plowed. Given the testimony at trial, the jury could have found the damage was caused by something other than County's snow removal.[2]

[¶ 11.] Finally, if the jury found County negligent, it could still have found for County under the public necessity instruction. Instruction 8, the propriety of which has not been appealed, provides as follows:

> One is privileged to enter land in the possession of another if it is, or is reasonably believed to be, necessary for the purpose of averting an imminent public disaster.
>
> This public necessity privilege permits the destruction of private property, including fences, without compensation where the destruction or damage was or reasonably appeared to be necessary to prevent an impending or imminent public disaster.
>
> You must find for the defendant if you determine that the County's decision to plow snow on to the rights-of-way was necessary, or appeared to be reasonably necessary, to avert imminent public disaster and protect public health, safety and welfare by ensuring access to roads for food, fuel and emergencies.

Gabriel testified that "[b]asically every day was an emergency" because roads continu-

---

2. This testimony also supports a finding for County on Instruction 10, which provides:

   In actions as this, and except as otherwise elsewhere stated in these instructions, a claimant for damages cannot recover if the accident was due to an act of God. An accident results from an act of God when it is due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pain, or care, reasonably to have been expected could have been prevented.

   If the jury finds that the damage which occurred was solely the result of an act of God, the defendant is not liable for the damage and the jury must return a verdict for the defendant. If the negligence of the defendant proximately contributed and an act of God combined to produce the damage, the defendant is liable.

ally blew shut. Near Plaintiffs' homes, ten-foot drifts had formed. County's plows would have been unable to plow through the drifts had they risen any higher. Therefore, Gabriel testified, it was necessary to push the snow off the right-of-ways to keep the roads from filling in and drifting even higher. Thomas admitted at trial that clearing the right-of-ways was important to keeping the roads open. He also admitted it was important to keep the roads open to allow people to get food and fuel, and allow for travel by emergency personnel. The testimony at trial supports a finding by the jury that any damage to Plaintiffs' fences that may have been caused by County was justified by the public necessity privilege.

[¶ 12.] As several legal theories properly submitted to the jury support its general verdict in favor of County, Plaintiffs have failed to show any prejudice as a result of Instruction 9. While application of the general verdict rule may seem unfair, any unfairness could have been cured by the complaining party. *See Martinmaas v. Engelmann*, 2000 SD 85, ¶ 74, 612 N.W.2d 600, 616 (Konenkamp, J., concurring in result). Either party may submit a special verdict or general verdict with special interrogatories for use by the jury, and if adopted by the trial court, thereby require the jury to state its findings on each issue of fact. *See* SDCL 15-6-49. Plaintiffs neither objected to the use of the general verdict form, nor proposed the use of special interrogatories or a special verdict. Because a general verdict form was used, "we have no way of knowing whether the jury" based its decision upon Instruction 9. *Knudson*, 1996 SD 137, ¶ 16, 556 N.W.2d at 78. Therefore, Plaintiffs' claim of error must fail.

[¶ 13.] **2. Whether the trial court erred in admitting evidence of a collateral source.**

[¶ 14.] We recently reiterated the rule that "a plaintiff's collateral source of income 'cannot be inquired into as part of a defendant's case, because of the danger that the jury may be inclined to ... reduce a damage award, when it learns that plaintiff's loss is entirely or partially covered.'" *Jurgensen v. Smith*, 2000 SD 73, ¶ 17, 611 N.W.2d 439, 442 (omissions in original). Plaintiffs claim this rule was violated at trial when County solicited testimony regarding Plaintiffs' receipt of benefits from Farm Service Agency to help repair their fence. Whether the testimony violated the collateral source rule need not be reached because of our decision on Issue 1. There are several legal theories upon which the jury could have found no liability on behalf of County. Therefore, the issue of damages, and the effect of any collateral source evidence, is moot.

[¶ 15.] MILLER, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.