ZINTER; Justice.
[¶ 1.] John DeBoer and Jill Lenards were in a ear accident. Lenards sued DeBoer for negligence, limiting her damages claim to pain and suffering. The jury returned a general verdict for DeBoer, and the circuit court denied Lenards’ motion for a new trial. Lenards appeals. We affirm.

Facts and Procedural History

[¶2.] On June 4, 2009, Lenards was stopped on a highway waiting to turn left with her turn signal on. DeBoer, who was traveling in the same direction, was unable to stop in time to avoid colliding with the rear end of Lenards’ car. DeBoer pleaded guilty to careless driving as a result of the accident. At trial, DeBoer claimed that the accident was unavoidable because the sun unexpectedly reflected off Lenards’ back window causing him to temporarily lose his vision. DeBoer, however, also testified that the accident was “completely his fault.”
[¶ 3.] Immediately after the accident, Lenards told DeBoer that she was alright. .Lenards also told both her OnStar attendant and the officer on scene that she did not require an ambulance. Lenards’ sister gave Lenards a ride home. The two decided to go to the emergency room because Lenards was starting to see “dots.” Lenards told the emergency room doctor that her neck hurt; however, Lenards did not say that her back. hurt. The emergency room doctor examined Lenards and found no vertebral tenderness, no CVA tenderness, and no hip tenderness.
[¶4.] On June 9, 2009, five days after the accident, Lenards saw her doctor. Le-nards complained of chronic dizziness— related to an inner ear tumor — and of neck pain. She had a CT scan of her neck. The CT scan was negative for any injury, and she was sent home. Lenards did not complain of back pain at this appointment. *869 She would not indicate that her back hurt until twenty-one days after this appointment — over three weeks after the accident.
[¶ 5.] On June 30, 2009, Lenards went to her family practice clinic and complained of lower back pain. An x-ray of her lumbar spine was taken, and her doctor indicated that her SI joints were normal. Her doctor recommended that Le-nards attend physical therapy. Her first physical therapy appointment was on July 6, 2009. At her second appointment, Le-nards reported that her lower back was better. On July 29, 2009, Lenards reported no numbness, no weakness, and no back pain. She felt well enough that she canceled her remaining appointments and stopped going to physical therapy.
[¶ 6.] Lenards started chiropractic treatment six weeks after she ended physical therapy. She sought the treatment for neck and back pain. Lenards continued to seek chiropractic treatment for five years; however, she would take breaks in treatment when her pain decreased. These breaks lasted as long as five months. On November 9, 2009, one of Lenards’ doctors wrote that Lenards “was involved in a motor vehicle accident, following which she was evaluated for spinal injuries. None were identified. However, the patient does have evidence for arthritis. This could definitely contribute to her future of having chronic back ■ pain secondary to chronic arthritis and large pendulous breasts.” Lenards had a slip-and-fall accident that caused additional pain in February 2011. She also underwent breast reduction surgery because of “longstanding neck and back pain secondary to macro-mastia,” a condition unrelated to the accident.
[¶ 7.] On May 22, 2012, Lenards sued DeBoer for pain and suffering allegedly caused by the accident. Lenards did not request damages for the medical bills she incurred following the accident. In fact, she successfully obtained an in limine ruling prohibiting the defense from introducing her medical bills associated with the accident. Lenards’ trial strategy was to limit her claim to pain and suffering she claimed to have suffered as a result of the accident. Lenards also limited that claim to a lower back injury. She told the jury that she was not suing for neck pain or upper back injuries. Her claims were limited to pain and suffering damages from her lower back and leg.[1]
[¶ 8.] Dr. Thomas Ripperda, DeBoer’s medical expert, opined that any pain complaints related to the accident had been resolved by July 31, 2009 — less than two months after the accident. According to Dr. Ripperda, pain complaints after August 12, 2009, could not be attributed to the accident. He also testified that Le-nards’ arthritis and body habitus could lead to persisting back problems. Dr. Rip-perda believed that, to a reasonable degree of medical certainty, Lenards’ low back pain could have been caused by a combination of obesity and macromastia. He indicated that there were no objective findings of any injury.[2]
*870 [¶ 9.] At trial, the circuit court denied Lenards’ motion for a directed verdict on liability. The court also instructed the jury, over Lenards’ objection, that DeBoer could be excused from liability if it found that the collision was an “unavoidable accident.” DeBoer requested that the case be decided by the jury on special interrogatories. Lenards objected and argued for a general verdict, which was submitted to the jury. Lenards asked for $115,000 for pain and suffering. The jury found for DeBoer. Lenards moved for a new trial, which was denied by the court. Lenards now appeals the denial of that motion raising three liability issues: whether the evidence was insufficient to support the jury’s verdict; whether the circuit court erred in instructing the jury that it could consider whether this was an unavoidable accident; and, whether the issue of liability should have been directed in her favor.[3]

Decision

[¶ 10.] The denial of a motion for a new trial is reviewed for an abuse of discretion. Hewitt v. Felderman, 2013 S.D. 91, ¶ 14, 841 N.W.2d 258, 262. “This Court will uphold a jury verdict ‘if the jury’s verdict can be explained with reference to the evidence,’ viewing the evidence in a light most favorable to the verdict.” Id. (quoting Alvine Family Ltd. P’ship v. Hagemann, 2010 S.D. 28, ¶ 18, 780 N.W.2d 507, 512). “This Court should only set a jury’s verdict aside in ‘extreme cases’ where the jury has acted under passion or prejudice or where ‘the jury has palpably mistaken the rules of law.’ ” Id. (quoting Roth v. Farner-Bocken Co., 2003 S.D. 80, ¶ 10, 667 N.W.2d 651, 659). “ ‘[I]f a verdict is susceptible to more than one construction, the construction which sustains the verdict must be applied.’ ” Zahn v. Musick, 2000 S.D. 26, ¶ 31, 605 N.W.2d 823, 830 (quoting Morrison v. Mineral Palace, 1998 S.D. 33, ¶ 11, 576 N.W.2d 869, 872).
[¶ 11.] Lenards’ alleged errors all relate to liability. Lenards argues that she was entitled to a new trial because DeBoer essentially admitted liability and she was indisputably injured. Lenards points out that even Dr. Ripperda said that Lenards was injured.
[¶ 12.] Lenards also claims that at least some damages were undisputed. We disagree. Lenards only sought pain and suffering damages for her lower back and leg, and evidence was introduced that the accident did not cause the pain and suffering she experienced in those body regions. Although Dr. Ripperda noted that. “Le-nards did suffer a thoracic and lumbar strain from the motor vehicle crash[,]” he expressed “concerns regarding the relatedness of the low back symptoms[.]” Dr. Ripperda also thought it was “questionable” whether Lenards’ leg symptoms were caused by the accident. Because Lenards limited her claim to pain and suffering from her leg and lower back, the jury could have accepted Dr. Ripperda’s concerns, especially in light of the fact that Lenards did not complain of lower back or 'leg pain until over three weeks after the accident. Further, Lenards’ tests following the accident showed no objective signs of injury. And finally, the jury could have found, after considering the evidence from *871 her doctor, physical therapist, and chiropractor, that Lenards’ pain and suffering was caused from a combination of her non-accident related health issues — arthritis, obesity, and macromastia.
[¶ 13.] Considering all the evidence, the question of damages caused by this accident was a disputed question of fact for the jury. See Waldner v. Berglund, 2008 S.D. 75, ¶ 14, 754 N.W.2d 832, 836 (“[T]he issue of damages in a personal injury action is peculiarly a question for the jury.”) (quoting Itzen v. Wilsey, 440 N.W.2d 312, 313 (S.D.1989)) (internal quotation mark omitted). Moreover, “pain and suffering ... damages are unique since they do not compensate a plaintiff for a known monetary loss which has been experienced or is likely to be experienced. Thus, there is no way to quantifiably measure the amount that a trier of fact should award in dollars.” Bakker v. Irvine, 519 N.W.2d 41, 48 (S.D.1994). Consequently, under the facts of this ease, the jury was free to accept or reject part or all of Lenards’ claim that the $115,000 she sought for pain and suffering was causally connected to this accident.
[¶ 14.] Because Lenards’ damages claim was the subject of a factual dispute, and because the jury returned a general verdict, we are precluded from reviewing her liability issues. “[I]n a civil case, if a general verdict is handed down and the jury could have decided the case on two theories, one proper and one improper, the reviewing court will assume that it was decided on the proper theory.” Thomas v. Sully Cnty., 2001 S.D. 73, ¶ 7, 629 N.W.2d 590, 592 (quoting Eberle v. Siouxland Packing Co., Inc., 266 N.W.2d 256, 258 (S.D.1978)). “Because a general verdict form was used, ‘we have no way of knowing whether the jury’ based its decision” on the issue of liability or damages. See id. at 594.
[¶ 15.] The use of a general verdict is especially problematic in this case. Le-nards sought only unquantifiable pain and suffering damages, and the evidence was disputed regarding that claim. Accordingly, even if the circuit court erred in submitting the case to the jury on liability and in giving an unavoidable accident instruction, the jury verdict must be presumed to be supported because of the disputed damages. See id. We therefore affirm without reaching Lenards’ liability issues.
[¶ 16.] GILBERTSON, Chief Justice, and SEVERSON and WILBUR, Justices, concur.
[¶ 17.] KERN, Justice, concurs specially.

. At trial, Lenards' counsel told the jury that Lenards was only suing for low back pain and leg pain. Counsel informed the jury that Le-nards’ neck pain was “really not part of this lawsuit[ ]” and that she was not "suing John DeBoer ... for neck pain[.]” Lenards stated in her opening statement that "back pain” was the “reason ... why we are here.” Counsel then went on to state: “We don't want anything for the upper back pain” and "quite frankly, the neck pain isn't that big of a deal.” Lenards' counsel concluded, "what we are here for is the low back pain.”

. Dr. Ripperda’s independent medical evaluation reflected that he had “some concerns regarding the relatedness of the low back symptoms to the motor vehicle crash!.]” While he admitted it could be "medical[ly] *870 probable" and that her symptoms, "in theory,” could be from the "pressure from a seat-belt from a motor vehicle crash,” he could not "state with any degree of reasonable medical probability that [Lenards’ symptoms were] directly related to the motor vehicle crash[.]” Dr. Ripperda also wrote that it was "questionable” whether Lenards’ leg symptoms were caused by the accident.

. Lenards’ motion for judgment as a matter of law was not preserved because it was not renewed at the close of the evidence.